## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| CHRIS WEEKS, Individually and On Behalf of All Others Similarly Situated, <br><br> Plaintiff, <br> v. <br><br> ARQIT QUANTUM INC. F/K/A CENTRICUS ACQUISITION CORP., DAVID WILLIAMS, NICK POINTON, CARLO CALABRIA, STEPHEN CHANDLER, MANFREDI LEFEBVRE D'OVIDIO, VERALINN JAMIESON, GARTH RITCHIE, AND STEPHEN WILSON, <br><br> Defendants. | No. 23-cv-2806 <br><br><br> **CLASS ACTION COMPLAINT** <br><br> **JURY TRIAL DEMANDED** |

Chris Weeks ("Plaintiff"), individually and on behalf of all other persons similarly situated, by Plaintiff's undersigned attorneys, for Plaintiff's complaint against Defendants (defined below), alleges the following based upon personal knowledge as to Plaintiff and Plaintiff's own acts, and information and belief as to all other matters, based upon, *inter alia*, the investigation conducted by and through his attorneys, which included, among other things, a review of (i) the Defendants' publicly available documents, (ii) conference calls and announcements made by Defendants, (iii) Defendants' public filings with the U.S. Securities & Exchange Commission ("SEC"), (iv) wire and press releases published by and regarding Arqit Quantum Inc. ("Arqit" or the "Company") f/k/a Centricus Acquisition Corp. ("Centricus"), and information readily obtainable on the Internet.

Plaintiff believes that substantial evidentiary support will exist for the allegations set forth herein after a reasonable opportunity for discovery.

## NATURE OF THE ACTION

1.      This is a class action on behalf of a Class of all persons or entities who purchased or otherwise acquired Arqit securities pursuant or traceable to the F-4 Registration Statement and Prospectus for the September 1, 2021 offering of Arqit securities (the "Registration Statement") in connection with the merger between Arqit and Centricus (the "Merger").  Plaintiff seeks to recover compensable damages caused by Defendants' violations of the federal securities laws under the Securities Act of 1933, 15 U.S.C. § 77a *et seq.* (the "Securities Act").

## JURISDICTION AND VENUE

2.      The claims asserted herein arise under and are alleged pursuant to Section 11 (15 U.S.C. § 77k), Section 12(a)(2) (15 U.S.C. § 77l(a)(2)), and Section 15 (15 U.S.C. § 77o) of the Securities Act.

3.      This Court has jurisdiction over the subject matter of this action pursuant to federal question jurisdiction (28 U.S.C. § 1331) and Section 22 of the Securities Act (15 U.S.C. § 77v).

4.      Venue is proper in this judicial district pursuant to Section 22 of the Securities Act and 28 U.S.C. § 1391(b) because the Defendants transact business in this district, the offer or sale of Arqit securities at issue in this action took place in this district, and a substantial part of the events or omissions giving rise to the claims occurred in this district.

5.      In connection with the acts, conduct and other wrongs alleged in this complaint, Defendants, directly or indirectly, used the means and instrumentalities of interstate commerce, including but not limited to, the United States mails, interstate telephone communications and the facilities of the national securities exchange.

## PARTIES

6.      On March 31, 2023, United States Magistrate Judge Marcia M. Henry issued a Memorandum and Order, pursuant to the Private Securities Litigation Reform Act, 15 U.S.C. § 78u-4 *et seq.* (the "PSLRA"), appointing Plaintiff as the Lead Plaintiff in *Glick v. Arqit Quantum Inc.*, No. 22-cv-2604-PKC-MMH (E.D.N.Y.).  Plaintiff is filing this action as Lead Plaintiff in *Glick* and as a related action to *Glick*, and to toll the statute of limitations for claims under the Securities Act in anticipation of filing a motion to consolidate this action with *Glick* and a consolidated or amended complaint in the consolidated action.

7.      Plaintiff, as set forth in his declaration and certification filed in *Glick* (*Glick* ECF No. 10-2), incorporated by reference herein, has received an assignment of claim from his wife, Judy L. Smith, who purchased Arqit securities pursuant or traceable to the Registration Statement and was economically damaged thereby.

8.      According to Arqit's SEC filings and public statements, Defendant Arqit is a cybersecurity company that "supplies a unique quantum safe encryption Platform-as-a-Service which makes the communications links or data at rest of any networked device or cloud machine secure against current and future forms of attack – even from a quantum computer." Arqit is incorporated in the Cayman Islands and its principal executive offices are located at Nova North, 7 Floor, 11 Bressenden Place, London SW1E 5BY, United Kingdom.  Prior to the Merger, Arqit was known as Arqit Limited.  Arqit's common shares trade on the NASDAQ  exchange under the ticker symbol "ARQQ" and Arqit warrants trade on the NASDAQ exchange under the ticker symbol "ARQQW."

9.      Centricus was a special purpose acquisition corporation ("SPAC"), or blank-check company, incorporated as a Cayman Islands exempted limited liability company, and formed for

3

the purpose of effecting a merger, capital stock exchange, asset acquisition, stock purchase, reorganization, or similar business combination with one or more businesses. Prior to the Merger, Centricus shares traded on the NASDAQ exchange under the ticker symbol "CENHU," Centricus units traded on the NASDAQ exchange under the ticker symbol "CENH," and Centricus warrants traded on the NASDAQ exchange under the ticker symbol "CENHW."

10.     Defendant David Williams ("Williams") was founder and Chief Executive Officer ("CEO") of Arqit Limited.  Defendant Williams was named in the Registration Statement as about to become, upon completion of the Merger, a director of Arqit, the Chairman of the Board of Directors of Arqit (the "Board"), and CEO of Arqit.  Defendant Williams signed the Registration Statement.  Defendant Williams served as a director of Arqit from the completion of the Merger to the date of the filing of this Complaint.

11.     Defendant Nick Pointon ("Pointon") served as the Chief Financial Officer ("CFO") of Arqit Limited from March 2021 through the Merger, and was named in the Registration Statement as about to become, upon completion of the Merger, a director of Arqit and the CFO of Arqit.  Defendant Pointon served as a director of Arqit from the completion of the Merger to the date of the filing of this Complaint.

12.     Defendant Carlo Calabria ("Calabria") was named in the Registration Statement as about to become, upon completion of the Merger, a director of Arqit.  Defendant Calabria served as a director of Arqit from the completion of the Merger to the date of the filing of this Complaint.

13.     Defendant Stephen Chandler ("Chandler") was named in the Registration Statement as about to become, upon completion of the Merger, a director of Arqit.  Defendant Chandler served as a director of Arqit from the completion of the Merger to the date of the filing of this Complaint.

4

14.    Defendant Manfredi Lefebvre d'Ovidio, ("d'Ovidio") served as the Chairman of the Board of Directors of Centricus from December 2020 through the Merger, including at the time the Registration Statement was filed with the SEC, and was named in the Registration Statement as about to become, upon completion of the Merger, a director of Arqit.  Defendant d'Ovidio served as a director of Arqit from the completion of the Merger to the date of the filing of this Complaint.

15.    Defendant Lt. General VeraLinn Jamieson (Ret.) ("Jamieson") served as a director of Arqit from April 2021 through the Merger, and the Registration Statement stated that she would continue to serve as a director of Arqit after the completion of the Merger.  Defendant Jamieson signed the Registration Statement.  Defendant Jamieson served as a director of Arqit from the completion of the Merger to the date of the filing of this Complaint.

16.    Defendant Garth Ritchie ("Ritchie") was the CEO and a director of Centricus from December 2020 through the Merger, including at the time the Registration Statement was filed with the SEC, and was named in the Registration Statement as about to become, upon completion of the Merger, a director of Arqit.  Defendant Ritchie served as a director of Arqit from the completion of the Merger to the date of the filing of this Complaint

17.    Defendant Gen. Stephen Wilson (Ret.) ("Wilson") served as a director of Arqit from April 2021 through the Merger, and the Registration Statement stated that he would continue to serve as a director of Arqit after the completion of the Merger.  Defendant Wilson signed the Registration Statement.  Defendant Wilson served as a director of Arqit from the completion of the Merger to the date of the filing of this Complaint

18.    Defendants Williams, Pointon, Calabria, Chandler, d'Ovidio, Jamieson, Ritchie, and Wilson are collectively referred to herein as the "Individual Defendants."

19.     In addition, the Individual Defendants:

a)      Directly participated in the management of the Company;

b)      Were directly involved in the day-to-day operations of the Company at the highest levels.

c)      Were privy to confidential proprietary information concerning the Company and its business and operations;

d)      Were directly or indirectly involved in drafting, producing, reviewing and/or disseminating the untrue statements of a material fact or statements that omitted to state a material fact required to be stated or necessary to make the statements made not misleading;

e)      Were aware of or recklessly disregarded the fact that the false and misleading statements were being issued concerning the Company; and/or

f)      Approved or ratified these statements in violation of the federal securities laws.

20.     Arqit is liable for the acts of the Individual Defendants and its employees under the doctrine of *respondeat superior* and common law principles of agency because all of the wrongful acts complained of herein were carried out within the scope of their employment.

21.     Defendant Arqit and the Individual Defendants are collectively referred to herein as "Defendants."

## SUBSTANTIVE ALLEGATIONS

### Background

22.     Centricus was incorporated on November 24, 2020 as a Cayman Islands exempted limited liability company for the purposes of effecting a merger, share exchange, asset acquisition, share purchase, reorganization or similar business combination with one or more businesses.

23.     On February 8, 2021, Centricus  completed its IPO of 34,500,000 Centricus units at an offering price of $10.00 per unit, with each unit consisting of one Centricus ordinary share and one-fourth of one Centricus warrant, generating total gross proceeds of $345,000,000.  The proceeds of the IPO were held in a Trust Account for the benefit of Centricus's public stockholders.

24.     Centricus units began trading on February 4, 2021 on the NASDAQ exchange under the ticker symbol "CENHU."

25.     Commencing on March 29, 2021, the securities comprising the Centricus units began separate trading on the NASDAQ exchange.  Centricus ordinary shares traded under the ticker symbol "CENH" and Centricus warrants traded under the ticker symbol "CENHW."

26.     On May 12, 2021, Arqit Limited and Centricus issued a press release announcing that they had "entered into a definitive agreement that would result in Arqit becoming a publicly listed company (the "Business Combination Agreement")," and that "[u]pon closing of the transaction, a newly formed Cayman holding company, Arqit Quantum Inc., will merge with Centricus, acquire Arqit [Limited] and register its shares for listing on the Nasdaq Stock Market."

27.     Pursuant to the Business Combination Agreement, as described in the Registration Statement, (a) the Merger would take place such that Centricus would be merged with and into Arqit, with Arqit surviving the Merger and the security holders of Centricus (other than security holders of Centricus electing to redeem their Centricus ordinary shares) becoming security holders of Arqit, and (b) Arqit would acquire all of the issued and outstanding share capital of Arqit Limited in exchange for Arqit ordinary shares, and, if applicable, the payment of cash and additional "Earnout Shares" (which would be paid post-closing if, during the three years after the Merger, Arqit common stock closed above $12.50 per share for 20 trading days during a 30 day

period), such that Arqit Limited would become a direct wholly owned subsidiary of Arqit (the "Share Acquisition").

28.     On May 12, 2021, concurrently with the execution of the Business Combination Agreement, Arqit and Centricus entered into subscription agreements with certain investors (the "PIPE Investors"), pursuant to which the PIPE Investors would purchase an aggregate of 7,100,000 Arqit ordinary shares at $10.00 per share for gross proceeds of $71 million (the "PIPE Financing"). The PIPE Investors include certain affiliates of Centricus (the "Centricus PIPE Investors"), who agreed to fund $51 million of the PIPE Financing, and strategic investors Heritage Group, Virgin Orbit and Sumitomo Corporation.

29.     On May 28, 2021, Arqit filed with the SEC on Form F-4 the initial draft Registration Statement for the Merger.

30.     On July 9, 2021, Arqit filed with the SEC Amendment No. 1 to the Registration Statement.

31.     On July 26, 2021, Arqit filed with the SEC Amendment No. 2 to the Registration Statement.

32.     On July 29, 2021, Arqit filed with the SEC Amendment No. 3 to the Registration Statement.

33.     On July 30, 2021, the SEC declared the Registration Statement effective.  The Registration Statement registered 43,125,000 ordinary shares or Arqit and 14,891,667 warrants to purchase ordinary shares or Arqit.

34.     Also on July 20, 2021, Arqit filed with the SEC the Prospectus for the issued shares on Form 424B3, which formed part of the Registration Statement.

35.     On August 23, 2021, Arqit filed Supplement No. 1 to the July 30, 2021 Prospectus.

36.     The deadline for Centricus shareholders to redeem their Centricus shares for cash from the Trust Account (rather than exchange those shares for Arqit securities) was August 27, 2021.

37.     On August 30, 2021, Arqit filed Supplement No. 2 to the July 30, 2021 Prospectus.

38.     On August 31, 2021, the stockholders of Centricus approved the Merger with Arqit.

39.     On September 2, 2021, Centricus merged with and into Arqit with Arqit surviving the Merger, and the security holders of Centricus (other than security holders of Centricus electing to redeem their Centricus ordinary shares) became security holders of Arqit.  In consideration for the Merger, each Centricus shareholder received one Arqit ordinary share and one Arqit warrant for each ordinary share and warrant they held in Centricus, respectively, immediately prior to the Merger.

40.     On September 3, 2021, Arqit acquired all of the issued and outstanding share capital of Arqit Limited from the shareholders of Arqit Limited in exchange for Arqit ordinary shares, such that Arqit Limited became a direct wholly owned subsidiary of Arqit.  Each ordinary share of Arqit Limited was acquired by Arqit in exchange for 46.06 ordinary shares of Arqit.

41.     The PIPE Financing closed on September 3, 2021 immediately after Merger and Share Acquisition.

42.     On September 3, 2021, the NASDAQ exchange certified that Arqit ordinary shares and Arqit warrants were approved by the exchange for listing and regulation upon official notice of issuance.

43.     After market close on September 3, 2021, Centricus' ordinary shares, units and warrants ceased trading on the NASDAQ exchange.

44.     On September 7, 2021, Arqit ordinary shares and warrants began trading on the NASDAQ exchange under the ticker symbols "ARQQ" and "ARQQW," respectively.

**Untrue Statements of Materially Fact and Omissions of Material Fact**

45.     The Registration Statement stated the following regarding Arqit's unique quantum encryption technology:

> Arqit is a cybersecurity company that has pioneered a unique quantum encryption technology which makes the communications links of any networked device ***secure against current and future forms of cyber-attack — even an attack from a quantum computer.*** Arqit's product, called QuantumCloud™, creates ***unbreakable software encryption keys that are low cost and easy to use with no new hardware required. The software has universal application to every edge device and cloud machine in the world.*** Arqit has not only invented a groundbreaking new quantum protocol, but it has also found a way to translate the benefits of quantum security to end point devices.
>
> Arqit's solution combines world-leading innovation in two areas: a new form of quantum satellite and a software agent that can be downloaded onto any device. ***Arqit's quantum satellite technology solves all previously known problems of quantum key distribution*** and puts identical copies of quantum safe keys into each data center in a network. The data centers use these keys to create secure channels between them — an outer perimeter of quantum safety that Arqit calls the QuantumCloud™. A second innovation is a small software agent downloaded from the QuantumCloud™ onto any form of device or integrated into any piece of software. By exchanging information with the QuantumCloud™, which moderates a key agreement process with all parties involved in a unique way, this software agent is able to create new symmetric encryption keys in partnership with any other device or cloud machine, or in large groups of devices. Keys are never "delivered", they are created, and so they cannot be intercepted. They are created at the end points in a manner that means they can never be known by a third party, and can be used only once if necessary and replaced infinitely. The service is sold and fulfilled on a self-service basis in the cloud making it an easily scalable business model.
>
> (Emphasis added.)

46.     The Registration Statement also contained a Risk Factors section. However, the Risk Factors failed to discuss the risks to Arqit surrounding the adoption of new communications technologies necessary for Arqit's encryption technology – namely, that Arqit needed the

widespread adoption of new protocols and standards for telecommunications, cloud computing, and internet services that currently were not supported.

47.     In addition, the Registration Statement made the following representations regarding Arqit's future prospects:

> To date, Arqit has been a development stage company, however it is currently preparing to launch its first live service during the second half of 2021. ***Arqit has already signed major, long-term contracts for its services with large companies and government institutions.*** Its next step in commercialization will be to undertake pilot phases that are required to be completed with each of its customers. Prior to launch of its satellites, Arqit's quantum encryption platform, QuantumCloud$^{TM}$ , will use machines in data centers to generate a terrestrial simulation of the quantum satellite technology. By 2023, its to launch its first two quantum satellites, which will generate a significant increase in the level of security offered by the end-to-end system.

> Arqit's current customers include the UK Government, the European Space Agency BT plc, and Sumitomo Corporation. Many companies like Verizon, BP, NEOM, Juniper, Dentons, Northrop Grumman and Iridium have contracted to test the use of Arqit's technologies in different use cases.

> (Emphasis added.)

48.     The statements contained in ¶¶45-47 were untrue statements of material fact or omitted to state material facts required to be stated or necessary to make the statements made not misleading because the statements misrepresented and failed to disclose the following adverse facts pertaining to the Company's business, operations, and prospects: (1) Arqit's proposed encryption technology would require widespread adoption of new protocols and standards for telecommunications which had not yet been adopted; (2) British cybersecurity officials questioned the viability of Arqit's proposed encryption technology in a meeting in 2020; (3) the British government was not an Arqit customer but, rather, providing grants to Arqit; (4) Arqit had little more than an early-stage prototype of its encryption system at the time of the Merger; (5) no commercial customer was using Arqit's encryption system with live data; (6) the bulk of the Company's committed revenue wasn't from selling its products; (7) several clients the Company

listed—including a number of British government agencies—were simply giving Arqit research grants, nonbinding memorandums of understanding or research agreements that come with no funding, not contracts for its encryption product, and (8) as a result, Defendants' statements about its business, operations, and prospects, were materially false and misleading and/or lacked a reasonable basis at all relevant times..

49.      On August 9, 2021, Defendants Ritchie and Williams gave an investor presentation titled "Arqit, Stronger simpler encryption."  A copy of the slide deck used for the presentation and a transcript of the presentation was filed by Arqit with the SEC on August 11, 2021.  According to the transcript of that presentation filed by Arqit with the SEC, Defendant Williams stated at the presentation:

> The Quantum Cloud product is live for service and we already have $130 million in signed committed revenue contracts….
>
> Customers are using the Arqit products today—and they are universally finding it to be an important part of their technology future….

50.      On August 18, 2021, Arqit held an Investor and Analyst Day, where Defendants Ritchie and Williams gave a presentation titled "Arqit, Stronger simpler encryption."  A copy of the slide deck used for the presentation and the transcript of the presentation were filed by Arqit with the SEC on August 19, 2021.  According to the transcript of that presentation filed by Arqit with the SEC, Defendant Williams stated at the presentation:

> The product is live with customers today. We're already taking the software to market.  The backlog, or rather the pipeline also includes a backlog of $130 million of binding revenue contracts. So these are contracts where the revenues will definitely be delivered.

51.      The statements contained in ¶¶49-50 were untrue statements of material fact or omitted to state material facts required to be stated or necessary to make the statements made not misleading because the statements misrepresented and failed to disclose the following adverse

facts pertaining to the Company's business, operations, and prospects: (1) Arqit's proposed encryption technology would require widespread adoption of new protocols and standards for telecommunications which had not yet been adopted; (2) British cybersecurity officials questioned the viability of Arqit's proposed encryption technology in a meeting in 2020; (3) the British government was not an Arqit customer but, rather, providing grants to Arqit; (4) Arqit had little more than an early-stage prototype of its encryption system at the time of the Merger; (5) no commercial customer was using Arqit's encryption system with live data; (6) the bulk of the Company's committed revenue wasn't from selling its products; (7) several clients the Company listed—including a number of British government agencies—were simply giving Arqit research grants, nonbinding memorandums of understanding or research agreements that come with no funding, not contracts for its encryption product, and (8) as a result, Defendants' statements about its business, operations, and prospects, were materially false and misleading and/or lacked a reasonable basis at all relevant times.

52.     On April 18, 2022, *The Wall Street Journal* (the "WSJ") published an article titled, "British Encryption Startup Arqit Overstates Its Prospects, Former Staff and Others Say." The WSJ article stated, in relevant part:

> **When the company secured its Nasdaq listing last autumn, its revenue consisted of a handful of government grants and small research contracts, and its signature product was an early-stage prototype unable to encrypt anything in practical use,** according to [former employees and other people familiar with the company]. ***The encryption technology the company hinges on***—a system to protect against next-generation quantum computers—***might never apply beyond niche uses, numerous people inside and outside the company warned, unless there were a major overhaul of internet protocols***.

> \*     \*     \*

> **British cybersecurity officials questioned the viability of Arqit's proposed approach to encryption technology** in a high-level evaluation they privately shared with the company in the summer of 2020, according to people familiar with the matter.

\*      \*      \*

***The U.S. National Security Agency and the NCSC published separate assessments in recent years warning against using satellite-based encryption systems like those Arqit is proposing*** to integrate into its current product in the next few years. The NSA said its warning was unrelated to any specific vendor, a spokesperson said.

\*      \*      \*

***The encryption system—with or without its satellite components—depends on the broad adoption of new protocols and standards for telecommunications, cloud computing and internet services that currently aren't widely supported***, people familiar with the mater said.

Steve Weiss, a San Francisco-based cryptographer and entrepreneur, said that ***what Arqit was proposing—relying in part on transmitting quantum information from satellites—is a well-known 1980s-era technology with limited real-world application***.   "There have been many proofs of concept and companies trying to sell products," he said.  "***The issue is that there is no practical-use case***."

\*      \*      \*

Key to the company's pitch was its claim that it had a large stream of future revenue locked in as the product was live and already selling well.  "Customers are using the Arqit products today—and they are universally finding it to be an important part of their technology future," Mr. Williams said in an August investor presentation shortly before the merger closed.  He added, 'The Quantum Cloud product is live for service and we already have $130 million in signed committed revenue contracts."

"These are contracts where the revenues will definitely be delivered," the CEO said.

***The people familiar with the matter said that the bulk of the company's committed revenue isn't from selling its products and that its public launch, the company had little more than an early-stage prototype of its encryption system.  Several clients the company lists—including a number of British government agencies—are simply giving Arqit research grants, nonbinding memorandums of understanding or research agreements that come with no funding, not contracts for its encryption product, they said.***

***No commercial customer was using Arqit's encryption system with live data when it made its market debut in September***, the people said, and the system couldn't meaningfully use any of the common internet protocols required to do nearly anything online.  They said it had signed two master distribution agreements with BT Group [] PLC and Sumitomo Corp. [] for the still-unrealized satellite component of its technology that are cancelable under certain conditions.

14

(Emphasis added.)

53.     On Monday April 18, 2022, Arqit ordinary shares fell $2.57 per share, or 17%, from a closing price on Thursday April 14, 2022 of $15.06 per share to a closing price of $12.49 per share on Monday April 18, 2022.  Arqit warrants fell $1.4479 per warrant, or 37.6%, from a closing price on April 14, 2022 of $3.85 per warrant to a closing price on April 18, 2022 of $2.4021 per warrant.  The NASDAQ exchange was closed on Friday April 15, 2022 in observance of Good Friday.

54.     On December 14, 2022, Arqit filed its annual report for the fiscal year ended September 30, 2022 on Form 20-F with the SEC.  In that Form 20-F, Arqit disclosed that "Arqit is also cooperating with an SEC investigation relating to the business combination between Arqit and Centricus Acquisition Corp., including by voluntarily producing documents. The SEC has informed Arqit that this is a fact-finding inquiry."

55.     On December 14, 2022, Arqit ordinary shares fell $1.10 per share, or 17.6%, from a closing price on December 13, 2022 of $6.25 per share, to a closing price on December 14, 2022 of $5.15 per share.  Arqit warrants fell $0.418 per warrant, or 34.8%, from a closing price on December 13, 2022 of $1.20 per warrant to a closing price on December 14, 2022 of $0.782 per warrant.

56.     On April 14, 2023, the date this Complaint was filed, Arqit ordinary shares closed at $1.24 per share and Arqit warrants closed at $0.33 per warrant.

57.     As a result of Defendants' wrongful acts and omissions, and the precipitous decline in the market value of the Company's securities, Plaintiff and other Class members have suffered significant losses and damages.

## PLAINTIFF'S CLASS ACTION ALLEGATIONS

58.     Plaintiff brings this action as a class action pursuant to Federal Rule of Civil Procedure 23(a) and (b)(3) on behalf of a class consisting of all persons who purchased or otherwise acquired Arqit securities pursuant or traceable to the Registration Statement for the offering of Arqit securities in connection with the Merger (the "Class").  Excluded from the Class are Defendants, the officers, directors, and employees of Arqit and Centricus (the "Excluded Persons"), members of Defendants' and Excluded Persons' immediate families, legal representatives, heirs, successors or assigns and any entity in which Defendants or the Excluded Persons have or had a controlling interest

59.     The members of the Class are so numerous that joinder of all members is impracticable. Starting on September 7, 2021, Arqit securities were actively traded on the NASDAQ. While the exact number of Class members is unknown to Plaintiff at this time and can be ascertained only through appropriate discovery, Plaintiff believes that there are hundreds, if not thousands of members in the proposed Class.

60.     Plaintiff's claims are typical of the claims of the members of the Class as all members of the Class are similarly affected by Defendants' wrongful conduct in violation of federal law that is complained of herein.

61.     Plaintiff will fairly and adequately protect the interests of the members of the Class and has retained counsel competent and experienced in class and securities litigation. Plaintiff has no interests antagonistic to or in conflict with those of the Class.

62.     Common questions of law and fact exist as to all members of the Class and predominate over any questions solely affecting individual members of the Class. Among the questions of law and fact common to the Class are:

a)      whether the Securities Act was violated by Defendants' acts as alleged herein;

b)      whether the Defendants' statements alleged herein contained untrue statements of material fact or omitted to state material facts required to be stated or necessary to make the statements made not misleading;

c)      whether the Defendants caused Arqit to issue untrue statements of material fact or omissions of material fact;

63.    A class action is superior to all other available methods for the fair and efficient adjudication of this controversy since joinder of all members is impracticable. Furthermore, as the damages suffered by individual Class members may be relatively small, the expense and burden of individual litigation make it impossible for members of the Class to individually redress the wrongs done to them. There will be no difficulty in the management of this action as a class action.

<u>**COUNT I**</u>
**For Violations of Section 11 of the Securities Act**
<u>**Against All Defendants**</u>

64.     Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

65.    This Count is asserted against all Defendants is based upon Section 11 of the Securities Act, 15 U.S.C. § 77k.

66.    This Count expressly excludes and disclaims any allegation that could be construed as alleging fraud or intentional or reckless conduct, as this Count is solely based on claims of strict liability and/or negligence under the Securities Act.  For purposes of asserting this Count, Plaintiff does not allege that the defendants named in this Count acted with scienter or fraudulent intent, which are not elements of a Section 11 claim.

67.     At the time the Registration Statement became effective, the Registration Statement contained untrue statements of material fact or omitted to state a material facts required to be stated therein or necessary to make the statements therein not misleading.

68.     Plaintiffs and the other members of the Class purchased or otherwise acquired Arqit securities pursuant or traceable to the Registration Statement.

69.     Arqit is the registrant for the securities registered in the Registration Statement for the offering of securities in connection with the Merger.

70.     Defendants, individually and in concert, directly or indirectly, disseminated or approved the untrue statements of material fact in the Registration Statement specified above or omitted to state material facts required to be stated in the Registration Statement or necessary to make the statements in the Registration Statement not misleading.

71.     As the issuer of the securities, Arqit is strictly liable to Plaintiff and the Class for the untrue statements of material fact and material omissions contained in the Registration Statement.

72.     The Individual Defendants were signatories of the Registration Statement, were directors of Arqit or Centricus at the time the Registration Statement was filed with the SEC, or were named in the Registration Statement, with their consent, as about to become directors of Arqit.  As a result, the Individual Defendants are liable to Plaintiffs and the Class for the material misstatements and omissions in the Registration Statement.

73.     The value of Arqit securities has declined substantially as a result of the Defendants violations of the Securities Act.

74.     As a result of the wrongful conduct alleged herein, Plaintiff and other members of the Class have suffered damages in an amount to be established at trial.

75.     Less than one year has elapsed since the time that Plaintiff discovered, or could reasonably have discovered, the facts upon which this Complaint is based.  Less than three years has elapsed since the time that the securities at issue in this Complaint were bona fide offered to the public.

76.     By reason of the foregoing, Defendants are each jointly and severally liable for violations of Section 11 of the Securities Act to Plaintiffs and the other members of the Class for substantial damages pursuant to Section 11(e), which they suffered in connection with their purchase of Arqit securities.

**COUNT II**
**Violations of Section 12(a)(2) of the Securities Act**
**Against Arqit and Williams**

77.     Plaintiff repeats and realleges each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

78.     This Count is asserted against Defendants Arqit and Williams based upon Section 12(a)(2) of the Securities Act, 15 U.S.C. § 77l(a)(2).

79.     This Count expressly excludes and disclaims any allegation that could be construed as alleging fraud or intentional or reckless conduct, as this Count is solely based on claims of strict liability and/or negligence under the Securities Act.  For purposes of asserting this Count, Plaintiffs do not allege that defendants named in this Count acted with scienter or fraudulent intent, which are not elements of a Section 12(a)(2) claim.

80.     Defendants Arqit and Williams made oral communications for the purpose of offering Arqit securities in connection with the Merger on August 9, 2021 and August 18, 2021.

81.     Arqit and Williams oral communications contained untrue statements of material fact or omitted to state material facts necessary in order to make the statements, in the light of the circumstances under which they were made, not misleading.

82.     Less than one year has elapsed since the time that Plaintiff discovered, or could reasonably have discovered, the facts upon which this Complaint is based. Less than three years has elapsed since the time that the securities at issue in this Complaint were bona fide offered to the public.

83.     By reason of the foregoing, Arqit and Williams are liable for violations of Section 12(a)(2) of the Securities Act to Plaintiff and the other members of the Class who purchased or otherwise acquired Arqit securities in and/or traceable to the Merger and who were damaged thereby.

84.     By reason of the foregoing, Arqit and Williams are liable to Plaintiff and the Class for the consideration paid for Arqit securities in and/or traceable to the Merger, with interest thereon, less the amount of any income received thereon, upon the tender of such security, or for damages if Plaintiff or the member of the Class no longer owns the security.

## COUNT III
### Violations of Section 15 of the Securities Act
### Against the Individual Defendants

85.     Plaintiff repeats and realleges each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

86.     This Count is asserted against the Individual Defendants based upon Section 15 of the Securities Act, 15 U.S.C. § 77o.

87.     This Count expressly excludes and disclaims any allegation that could be construed as alleging fraud or intentional or reckless conduct, as this Count is solely based on claims of strict liability and/or negligence under the Securities Act.  For purposes of asserting this Count, Plaintiffs do not allege that defendants named in this Count acted with scienter or fraudulent intent, which are not elements of a Section 15 claim.

88.     As set forth above, Arqit is strictly liable under Section 11 of the Securities Act for untrue statements and omissions of material fact in the Registration Statement.

89.     The Individual Defendants participated in the operation and management of Arqit, and conducted and participated, directly and indirectly, in the conduct of Arqit's business affairs. Because of their senior positions, they knew the adverse non-public information about Arqit's misstatements of its business, operations, and prospects.

90.     As officers and/or directors of a publicly owned company, the Individual Defendants had a duty to disseminate accurate and truthful information with respect to Arqit's business, operations, and prospects, and to correct promptly any public statements issued by Arqit which had become materially false or misleading.

91.     Because of their positions of control and authority as senior officers, the Individual Defendants were able to, and did, control the contents of the Registration Statement and the investor presentations made on August 9, 2021 and August 18, 2021.

92.     By virtue of the foregoing, the Individual Defendants were "controlling persons" of Arqit within the meaning of Section 15 of the Securities Act.

93.     The Individual Defendants also had the power and influence, and exercised the same, to cause Arqit to engage in the acts described herein, including by causing Arqit to conduct the offering of securities pursuant to the Registration Statement.

94.     By reason of the above conduct, the Individual Defendants are liable for Arqit's wrongful conduct to the same extent Arqit is liable under Section 11 of the Securities Act to Plaintiff and members of the Class who purchase or otherwise acquired Arqit securities pursuant or traceable to the Registration Statement.

## PRAYER FOR RELIEF

**WHEREFORE**, plaintiff, on behalf of himself and the Class, prays for judgment and relief as follows:

a)      Declaring this action to be a proper class action under Rule 23, certifying Plaintiff as a class representative under Rule 23, and designating Plaintiff's counsel as class counsel;

b)      Awarding damages in favor of Plaintiff and the other Class members against all Defendants, jointly and severally, together with interest thereon;

c)      Awarding Plaintiff and the Class reasonable costs and expenses incurred in this action, including counsel fees and expert fees; and

d)      awarding Plaintiff and other members of the Class such other and further relief as the Court may deem just and proper.

## JURY TRIAL DEMANDED

Plaintiff hereby demands a trial by jury.

Dated: April 14, 2023                          Respectfully submitted,

**WOLF POPPER LLP**

By: */s/ Joshua W. Ruthizer*
Robert C. Finkel
rfinkel@wolfpopper.com
Joshua W. Ruthizer
jruthizer@wolfpopper.com
Matthew Insley-Pruitt
Minsley-pruitt@wolfpopper.com
Sasha D. Marseille
smarseille@wolfpopper.com
845 Third Avenue
New York, NY 10022
Telephone: (212) 759-4600

*Attorneys for Movant and Proposed Lead Counsel for the Class*

22